# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

C.A. No. **25-2946**

THOMAS TAYSSON BATISTA RAMOS, Petitioner

VS.

ATTORNEY GENERAL UNITED STATES OF AMERICA

(Agency No. A201-823-555)

Present: KRAUSE, BOVE, and NYGAARD, Circuit Judges

 Submitted are:

 (1) By the Clerk for possible transfer of the petition for review to the United States Court of Appeals for the Fifth Circuit;

 (2) Petitioner's motion for an emergency stay of removal; and

 (3) Respondent's motion to summarily deny the petition for review for improper venue or as untimely, opposition to transfer of venue, opposition to petitioner's motion for a stay of removal, and request to stay production of the administrative record

  in the above-captioned case.

       Respectfully,


       Clerk

_____ORDER_____

 The Court is in receipt of the above-referenced motions. Immigration proceedings were initiated against Petitioner in the Elizabeth Immigration Court in New Jersey, but they were dismissed before completion. The Final Administrative Removal Order was subsequently entered on September 4, 2025, in Los Fresnos, Texas. Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Texas, which was denied on October 2, 2025. In its order denying habeas

relief, that court enjoined the Government's removal of Petitioner from the United States until October 8, 2025, at 5:00 p.m. to permit him to seek further review.

Petitioner filed a petition for review and an emergency motion for a stay of removal in this Court on October 6, 2025, which was referred to this motions panel at 4:24 p.m. on October 8, 2025, with a ruling requested by 5:00 p.m. The panel then entered a temporary administrative stay in order to allow it to consider the motion. The Government filed its opposition to Petitioner's emergency motion for a stay of removal and its own motion for summary action yesterday, October 15, 2025. Having now had the opportunity to consider the emergency motion and response, we conclude that venue is proper in the United States Court of Appeals for the Fifth Circuit, *see Castillo v. Att'y Gen.*, 109 F.4th 127, 134 (3d Cir. 2024), and that it is in the interests of justice to transfer this matter to where, under our precedent, it should have been initially brought, *see id.* at 135-36. For these reasons, the Clerk is instructed to transfer the petition for review to the United States Court of Appeals for the Fifth Circuit. The temporary administrative stay entered on October 8, 2025, is hereby lifted and Petitioner's motion for an emergency stay of removal is denied[*]. The Government's motion for summary action is referred to the Fifth Circuit, where any responsive briefing should be filed.

By the Court,

s/ Cheryl Ann Krause
Circuit Judge

Dated: October 17, 2025
JK/cc: All Counsel of Record

A True Copy:

Patricia S. Dodszuweit, Clerk

---

[*] Judge Bove concurs in the denial of stay pending appeal and files the attached concurring opinion.

BOVE, *Circuit Judge*, concurring in the denial of stay pending appeal.

I write to explain the reasons for my dissent from the October 8, 2025 administrative stay in this case, and today's denial of the "Emergency Motion" seeking a stay pending adjudication of the Petition For Review.

In my view, this motion should not have interfered with DHS operations for an instant. Petitioner overstayed his authorized entry, and he waived the right to challenge his removal. He filed the underlying Petition For Review in the wrong court and, like the motion, the Petition is devoid of substance. Nevertheless, Petitioner's impending removal was paused by an administrative stay for more than six days.

Functioning as a co-equal branch of government requires "respect for the functions of the other branches." *Qatanani v. AG*, 144 F.4th 485, 505 (3d Cir. 2025) (Matey, J., dissenting).[1] By constitutional design, we are to treat "judicial review of agency action and executive action as sensitive business deserving deference." *Id.* While there is no question in my mind that we all approached that task in good faith here, I believe that the administrative stay was inconsistent with these principles. The subsequent denial of the broader stay motion is an appropriate change in course.

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, alterations, and subsequent history.

# I.

The record submitted by Petitioner's counsel establishes the following relevant facts.

Petitioner claims to be a dual national of Brazil and Italy. In December 2021, the Executive Branch permitted Petitioner to enter the United States pursuant to the Visa Waiver Program. Brazilian nationals may not participate in the Program, but Italian nationals are eligible. Conveniently, the record shows that Petitioner used an Italian passport when he entered the United States. The Program required Petitioner to waive all challenges to removal except for an asylum claim. He was not authorized to remain in the country after March 2022. Petitioner overstayed. There is no evidence that he had any basis for doing so.

In August 2023, during his unauthorized presence in the United States, DHS approved Petitioner's counseled application for classification as a Special Immigrant Juvenile. At the same time, DHS granted Petitioner deferred action status in the United States for four years. DHS explained to Petitioner, in writing, that deferred action is only "an act of administrative convenience to the government which gives some cases lower priority for removal from the United States for a specified period of time."

In May 2025, DHS detained Petitioner in Massachusetts. He told authorities that his parents were "born in Brazil" and "are citizens of Brazil," and that he had "no fear of returning to Brazil." Two days later, DHS issued Petitioner a Notice to Appear charging inadmissibility on the basis that Petitioner was "present without admission or parole" under 8 U.S.C. § 1182(a)(6)(A).

DHS moved to dismiss the initial removal proceeding in June 2025. In that submission, DHS characterized the Notice to Appear as improvidently issued and argued that Petitioner "was subject to asylum only proceedings" in connection with the Visa Waiver Program. On June 18, 2025, an Immigration Judge in New Jersey granted the unopposed motion and dismissed the proceeding without prejudice. As of the day of the dismissal order, which was mailed to one of Petitioner's attorneys of record in Massachusetts, DHS had detained Petitioner at a facility in Texas.

On August 7, 2025, new Massachusetts-based counsel for Petitioner filed a habeas petition in the Southern District of Texas. On September 2, 2025, a DHS official in Texas issued a Final Administrative Removal Order calling for Petitioner's removal as a "Visa Waiver Program Violator." The order stated the Petitioner had "waived any right to contest, other than on the basis of an application for asylum, any action for your removal." Soon after, DHS sent Petitioner and his counsel at the time a written notice terminating his period of deferred action in connection with the 2023 Special Immigrant Juvenile classification.

On September 12, 2025, DHS requested Petitioner's travel documents and asserted that "a removal date is scheduled no later than the end of October." On September 24, Petitioner's new Massachusetts-based counsel filed a motion for a preliminary injunction in the case where the habeas petition was pending. The judge in the Southern District of Texas held a hearing on October 2, 2025. He denied the motion for injunctive relief the same day, dismissed the habeas petition as moot, and stayed Petitioner's removal until October 8, 2025.

On October 6, 2025, additional New Jersey-based counsel filed in this Court a Petition For Review of the Final Administrative Removal Order that was issued in Texas, as well as a separate Emergency Motion For Stay Of Removal.

**II.**

I dissented from the October 8, 2025 administrative stay because my "first-blush judgment about the relative consequences" to the parties was different from the undisputedly good-faith judgment calls made by my colleagues. *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring in denial of applications to vacate stay). For me, the harms of a stay to the Executive Branch outweighed the risk of unwarranted consequences to Petitioner.

The absence of an opposition filing by the government at the time the administrative stay was imposed "doesn't mean that [Petitioner] is entitled to relief." *Sarkisov v. Bondi*, 138 F.4th 976, 980 (6th Cir. 2025). Petitioner bore the burden of demonstrating that an administrative stay was appropriate. *See New York v. McMahon*, 2025 WL 1503501, at *1 (1st Cir. 2025). At minimum, he was required to demonstrate that his situation raised sufficiently complicated questions to warrant a brief stay for the purpose of researching the issues presented. Petitioner's counsel did not meet that burden by filing a motion that covered little more than four pages, elided key facts and law relating to the Visa Waiver Program, and cited only two (distinguishable) cases.

The biggest problem is that Petitioner offered conclusory treatment of the threshold question raised by the application: why did Petitioner file a motion in the Third Circuit challenging a Final Administrative Removal Order issued in Texas? When considering an

administrative stay, "[w]e can't simply ignore the fact that the government is likely to prevail on the merits." *Nat'l Urban League v. Ross*, 977 F.3d 698, 705 n.5 (9th Cir. 2020) (Bumatay, J., dissenting). That was true here, in my view, because this Court is not the appropriate venue for the relief Petitioner seeks.

Nor can we ignore the fact that stays "impose a considerable administrative burden" on the government. *INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers). "In recent times," the Supreme Court has "repeatedly needed to dial back lower court decisions that exceed the judiciary's equitable authority" by "improperly intrud[ing] on a coordinate branch of the Government and prevent[ing] the Government from enforcing its policies." *Cmty. Legal Servs. v. HHS*, 2025 WL 2884805, at *8, 17 (9th Cir. 2025) (Bumatay, J. and VanDyke, J., dissenting from the denial of rehearing en banc). These concerns are especially pronounced in the immigration-enforcement context. Stays may require the Executive Branch to reschedule removal operations that were negotiated using exclusive foreign affairs authority, pay for unused space on removal flights, and use bedspace at detention facilities that could be put to other purposes that are exclusively committed to the discretion of the President. More broadly, "[w]hen a federal court improperly enjoins the Executive from carrying out its agenda, the court 'intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies.'" *WMM*, 2025 WL 2508869, at *68 (Oldham, J., dissenting) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025)). "That is a form of irreparable injury to the Government." *Id.* In my view, these harms to the Executive Branch outweighed the risk of unwarranted costs to Petitioner.

Finally, my dissent was also driven by the fact that administrative stays should be quite rare and extremely brief. DHS's actions are "entitled to a presumption of regularity." *McLeod v. INS*, 802 F.2d 89, 95 n.8 (3d Cir. 1986). "[P]roper respect for the political branches' plenary power over immigration has repeatedly moved the courts against second guessing their judgment." *Qatanani*, 144 F.4th at 520 n.40 (Matey, J., dissenting). There is also a "lurking" problem that administrative stays can be used to "avoid *Nken* for too long." *Texas*, 144 S. Ct. at 799 (Barrett, J., concurring in denial of applications to vacate stay). Thus, administrative stays "should last no longer than necessary to make an intelligent decision on the motion for a stay pending appeal." *Id.* For all of these reasons, I dissented from the decision to stop Petitioner's removal through an administrative stay.

## III.

Today, Petitioner's request for a stay pending adjudication of the Petition For Review is denied, properly, because the *Nken* factors do not support the motion. As to the "most critical" considerations, Petitioner has not established a likelihood of success on the merits or a case-specific risk of irreparable harm. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). An additional stay would worsen the ongoing irreparable harm to the Executive Branch, and a stay is not in the public interest under the circumstances presented.

## A.

On the merits, Petitioner has said nothing that seriously calls into question the Final Administrative Removal Order.

Petitioner came to the wrong place. Venue lies where the immigration proceedings

were "completed." 8 U.S.C. § 1252(b)(2). The relevant proceedings were completed in Texas. In the Petition For Review, Petitioner contended that the proceedings were "completed in Elizabeth New Jersey." False. In New Jersey, an Immigration Judge dismissed earlier removal proceedings—with Petitioner's consent, and without prejudice—by order dated July 9, 2025. DHS then initiated new asylum-only proceedings culminating in the September 2, 2025 Final Administrative Removal Order, which was issued in Los Fresnos. The Petition expressly challenges the Texas Order and makes no claims regarding the consented-to dismissal in New Jersey. Therefore, the appropriate venue for the Petition For Review is the 5th Circuit.

I doubt Petitioner will fare any better in the appropriate venue. In 2021, he waived substantially all rights to challenge his removal under the Visa Waiver Program. *See* 8 U.S.C. § 1187(b)(2). We presume DHS properly applied the procedures associated with the Program, and Petitioner has not rebutted that presumption. *See Bradley v. AG*, 603 F.3d 235, 239 (3d Cir. 2010). The Program's "ironclad" removal waiver requirement "assures that a person who comes here with a VWP visa will leave on time and will not raise a host of legal and factual claims to impede his removal if he overstays." *Id.* at 238-39. Petitioner is "removable and may not contest his or her removability except by seeking asylum." *Shkembi v. AG*, 41 F.4th 237, 242 (3d Cir. 2022). Petitioner has not informed us of an asylum claim or an intention to file one. Any such claim would encounter a serious obstacle from Petitioner's May 2025 admission that he "has no fear of returning to Brazil." By staying Petitioner's removal and considering a broader stay, the administrative stay simultaneously denied the Executive Branch the benefit of this congressionally sanctioned

7

bargain with Petitioner, and granted Petitioner a benefit he expressly waived.

Petitioner's counsel glosses over § 1252(b)(2) and ignores his removal waiver under the Visa Waiver Program. Instead, counsel rests her case on due process arguments and Suspension Clause analysis in *Osorio-Martinez v. AG*, 893 F.3d 153 (3d Cir. 2018). That case offers Petitioner no refuge.

Petitioner only gestures at due process, and his waiver is a significant problem for any due process challenge to the Final Administrative Removal Order. "Once the alien has attempted to benefit from the VWP, he or she is bound by its terms." *Shkembi*, 41 F.4th at 243; *see also Robles Corcuera v. AG*, 2025 WL 2924867, at *3 (3d Cir. Oct. 2025) (Matey, J., dissenting) (reasoning that the Due Process Clause "created no open-ended prerogative to oppose all public action, only a promise to follow procedures that, if established, explain how government can act against an individual's life, liberty, or property"). Petitioner references the termination of his deferred action status, but he lacks a liberty or property interest in that relief and fails to identify any cognizable form of prejudice. *See Barradas Jacome v. AG*, 39 F.4th 111, 125 (3d Cir. 2022). For example, Petitioner offers no basis for us to conclude that, as a visa overstay with nothing more than a Special Immigrant Juvenile classification, he would be unfairly prejudiced by removal. *See* 8 U.S.C. § 1182(a)(9)(B)(ii). *Osorio-Martinez* is "distinguishable because the Court did not hold SIJS recipients are exempt from removal due to inadmissibility, but only that Congress intended to provide SIJS recipients with an opportunity to pursue adjustment of status." *Cortez-Amador v. AG*, 66 F.4th 429, 433 n.12 (3d Cir. 2023). Whereas the *Osorio-Martinez* petitioners obtained Special Immigrant Juvenile status during the litigation and

were "awaiting adjustment of their status to LPR," 893 F.3d at 160, Petitioner had an opportunity to pursue adjusted status for almost two years prior to his detention and has told us nothing about the status of those efforts, if any.

As to the Suspension Clause, the Supreme Court's decision in *DHS v. Thuraissigiam*, 591 U.S. 103 (2020) abrogated the analysis in *Osorio-Martinez*. The *Thuraissigiam* Court endorsed a concurrence in a predecessor opinion concerning the *Osorio-Martinez* petitioners, *id.* at 120, in which Judge Hardiman argued persuasively that the petitioners' efforts to "alter their status in the United States in the hope of avoiding release to their homelands . . . . dooms the merits of their Suspension Clause argument . . . ." *Castro v. DHS*, 835 F.3d 422, 450-51 (3d Cir. 2016) (Hardiman, J., concurring dubitante). Here, Petitioner's "Suspension Clause argument fails" because the purpose of his Petition is "to obtain authorization to stay in this country." *Thuraissigiam*, 591 U.S. at 107. "[T]he government is happy to release him—provided the release occurs in the cabin of a plane bound for [Brazil]." *Id.* at 119. But Petitioner is seeking release into the United States, and that "falls outside the scope of the writ as it was understood when the Constitution was adopted." *Id.* at 120.

In sum, Petitioner is in the wrong venue, he waived his challenges to the removal proceedings, and the challenges he has articulated lack substance. His stay application was dead on arrival.

## B.

Petitioner argues that the failure to halt his removal "may" result in irreparable harm. The argument does not warrant interfering with the operations of the Executive Branch. A

"possibility" of irreparable harm is not enough. *Nken v. Holder*, 556 U.S. 418, 434-35 (2009).

Seeking to establish more, Petitioner relies on *Osorio-Martinez* to argue that removal would "immediately terminate . . . his eligibility for adjustment of status." This amounts to a claim that the irreparable harm standard is satisfied each time a Special Immigrant Juvenile is removed and subject to an admissibility bar. The claim fails. "The Supreme Court has rejected the idea that removal automatically constitutes irreparable injury *even to the removed alien*." *WMM v. Trump*, 2025 WL 2508869, at *64 (5th Cir. 2025) (Oldham, J., dissenting). Removal is not "categorically irreparable." *Nken*, 556 U.S. at 435.

## C.

The "merge[d]" interests of the public and the Executive Branch cut strongly against Petitioner's stay motion. *Nken*, 556 U.S. at 435.

I recognize the public interest in even administration of the immigration laws, but Executive Branch officials are entitled to a "heavy presumption" that they "act in good faith 'in the absence of clear evidence to the contrary.'" *WMM*, 2025 WL 2508869, at *66 (Oldham, J., dissenting) (quoting *United States v. Chem. Found.*, 272 U.S. 1, 15-16 (1926)). Petitioner has offered no evidence to the contrary. He has identified no reason to doubt that DHS applied the immigration laws in a just manner in his case.

The public also has an interest in "prompt execution of removal orders." *Nken*, 556 U.S. at 436. DOJ informed us yesterday that DHS "desires to effectuate Petitioner's removal," but "no current removal date is scheduled presently." It is hardly surprising that

10

DHS cannot make firm removal plans at this point following the delays occasioned by the meritless habeas proceedings in the Southern District of Texas and the administrative stay in this case. "[T]he consequence of delay" is "to permit and prolong a continuing violation of United States law." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). This aspect of the public's interest is "heightened" here because Petitioner "substantially prolonged his stay by abusing the processes provided to him" in connection with the Visa Waiver Program. *Nken*, 556 U.S. at 436.

In parallel to the strong public interest in denying the stay, the Executive Branch has a "paramount interest in protecting" the "territorial integrity" of the United States. *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). "[A]ny policy toward aliens" is "intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952). Petitioner's reliance on the Special Immigrant Juvenile classification to try to stay his removal directly implicates those concerns. In July 2025, DHS issued a report describing "significant national security and integrity vulnerabilities in the Special Immigrant Juvenile program," which noted that "[i]dentity and age fraud remains a persistent trend."[2] These findings underscore the manner in which undue interference with the implementation of Executive Branch immigration policies results in irreparable harm to the government and is not in the public interest. *See, e.g.*, *WMM*, 2025 WL 2508869, at *68 (Oldham, J., dissenting).

---

[2] USCIS Policy Alert (June 6, 2025), *available at* https://perma.cc/AY8U-65BQ.

* * *

I dissented from the administrative stay on October 8, 2025 because I did not believe Petitioner had met his burden of demonstrating that we should pause his removal. Today, we correctly deny the "Emergency Motion" for a stay. Although I share Judge Porter's "doubt that we are inherently empowered to transfer" this type of case, this Court's precedent permits that course. *Castillo v. AG*, 109 F.4th 127, 136 (3d Cir. 2024) (Porter, J., concurring in part and dissenting in part). Accordingly, I concur in the transfer order.